## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **SOUTH HILLS AREA COUNCIL** | : |
| **OF GOVERNMENTS, <u>et</u> <u>al</u>.,** | :  **CIVIL ACTION** |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | :  **No. 13-7457** |
| | : |
| **VERIZON PENNSYLVANIA LLC, <u>et</u> <u>al</u>.,** | : |
| | : |
| **Defendants.** | : |

_____

**Goldberg, J.**                                                           **December 15, 2014**

## <u>MEMORANDUM OPINION</u>

Plaintiffs, the South Hills Area Council of Governments (South Hills), a group of eleven municipalities in the Pittsburgh area, and the Municipality of Penn Hills (Penn Hills), also in the Pittsburgh area, have filed a putative class action against Verizon Pennsylvania LLC (Verizon PA) and Verizon Delaware LLC (Verizon DE).  Plaintiffs essentially allege that Verizon is improperly withholding a portion of gross revenues.

Before me is Defendants' motion to dismiss.  For the following reasons, I will grant Defendants' motion.

### I.       FACTUAL AND PROCEDURAL HISTORY[1]

Penn Hills and South Hills entered into cable franchise agreements with Verizon PA on December 17, 2007 and February 27, 2008, respectively.  The agreements grant Verizon PA the

_____

[1] When deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  I assume that all facts found in the December 20, 2103 complaint and the March 11, 2014 amended complaint are true.

non-exclusive right to "own, construct, operate, and maintain a Cable System to provide Cable Services along the Public Rights-of-Way" within the franchise area.   In exchange, the municipalities are to receive five percent of "gross revenue" from local subscriber fees. According to the terms of the agreements, "gross revenue" includes subscriber late payment fees. Plaintiffs allege that Verizon PA has underreported late payment fees received from subscribers and underpaid the franchise fees on late payment fee revenues.  (Am. Compl. ¶¶ 1-4.)

Plaintiffs seek monetary damages in the form of past due franchise fees on late payment fees.   They also request injunctive relief enjoining Verizon from underreporting late fees received from subscribers and underpaying franchise fees on late payment fees in the future. Plaintiffs bring this action on their own behalf and on behalf of all members of the following putative class: "All franchising authorities that have granted a cable franchise to one of the Verizon State Corporations (or any of their predecessors, divisions, subsidiaries and affiliates) that provides for the payment of franchise fees on late payment fees as part of Gross Revenues." Plaintiffs allege violations of the Federal Communications Act, breach of contract, unjust enrichment, and further demand that a full accounting be made of all late payment fees on cable service revenues by the Verizon State Corporations. (Id. at ¶¶ 4, 17, 25-45.)

Defendants have filed a motion to dismiss, Plaintiffs filed a response, and Defendants have filed a reply.  The motion is now fully briefed and ready for disposition.

## II.    CLAIMS AGAINST VERIZON DE

Verizon DE argues that the claims against them should be dismissed due to Plaintiffs' lack of standing, this Court's lack of personal jurisdiction, and Plaintiffs' failure to plead any viable claims.

2

A.       Standing of Plaintiffs to Sue Verizon DE

Article III of the Constitution requires that a plaintiff have standing to assert a claim for relief in the district court.  See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing is "the threshold issue in every federal case, determining the power of the court to entertain the suit."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  In order to have Article III standing, a plaintiff must adequately establish (1) an injury in fact; (2) causation; and (3) redressability.  Sprint Communications Co., L.P. v. APCC Services, Inc., 554 U.S. 269, 273 (2008) (citing Lujan, 504 U.S. at 560-61).  These requirements apply with equal force to class actions.  "That a suit may be class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Lewis v. Casey, 518 U.S. 343, 357 (1996) (internal quotations omitted).

Both South Hills and Penn Hills are Pennsylvania franchising authorities which contracted with Verizon PA, not Verizon DE.  Verizon DE urges that absent a contractual relationship, Plaintiffs have suffered no harm, and therefore lack standing to sue Verizon DE. (Br. at 7-9.)  Acknowledging that they have not alleged to have contracted with Verizon DE, Plaintiffs nonetheless assert that they are entitled to bring suit against Verizon DE because the question of whether representative plaintiffs in one state may represent plaintiffs suing under the law of another state can be properly addressed at the class certification stage.  (Resp. at 20-22.) In support of this proposition, Plaintiffs cite to Ramirez v. S.T.I. Prepaid LLC, 664 F.Supp.2d 496 (D.N.J. 2009).

3

In <u>Ramirez</u>, purchasers of prepaid calling cards from New York and New Jersey brought suit against S.T.I. Prepaid, a company which sells prepaid calling cards nationwide. <u>Id.</u> at 499. The plaintiffs alleged a violation of consumer protection laws in New York and New Jersey, as well as various "sister states," and sought to represent a class of consumers who bought calling cards from the defendant company in all of the states. <u>Id.</u> at 498. In its motion to dismiss, the defendant argued that the plaintiffs lacked standing in the "sister states" because "neither named plaintiff claims to have been injured in any state other than New York or New Jersey." <u>Id.</u> at 504. The <u>Ramirez</u> court rejected this argument, finding that:

> Defendants do not contest the fact that the named Plaintiffs have standing to bring their individual claims [under the consumer protection laws of New York and New Jersey]. The Complaint makes clear that the so-called "sister state" consumer protection laws are only implicated by members of the putative class. Hence, the fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial. The issue Defendants raise is one of predominance—whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. Rule 23(b)(3).

<u>Id.</u> at 505 (internal citation omitted).

What substantially differentiates <u>Ramirez</u> is that "there [was] no dispute that the named Plaintiffs claim[ed] to have been injured by the same calling cards as the putative class plaintiffs they s[ought] to represent," <u>Id.</u> at 505. Here however, Plaintiffs do not claim to have contracted with or to have been injured by Verizon DE. As such, Plaintiffs do not have standing against Verizon DE and cannot represent a putative class of franchising authorities that contracted with Verizon DE. <u>See id.</u> at 504 ("If the named plaintiffs bringing a class action [] do not individually

4

have standing to bring those claims, the case should be dismissed prior to the class certification process.")  Thus, the claims against Verizon DE are dismissed.[2]

### III.  CLAIMS AGAINST VERIZON PA

Plaintiffs also bring both federal and state law claims against Verizon PA.  Under federal law, Plaintiffs allege a violation of the Federal Communications Act.  Under state law, Plaintiffs plead claims for breach of contract and unjust enrichment.  Plaintiffs further demand that a full accounting be made of all late payment fees on cable service revenues by Verizon PA.

#### A.    The Federal Communications Act

Count I of the amended complaint alleges that Verizon PA violated the Federal Communications Act (the Act) for having underreported late payment fees received from subscribers and underpaid the franchise fees on late payment fee revenues.  The Act regulates the franchise fees which are paid by cable operators, and states that, "subject to the limitation of subsection (b) of this section, any cable operator may be required under the terms of the franchise to pay a franchise fee."  47 U.S.C. § 542(a).  Subsection (b), which regulates the "[a]mount of fees per annum," sets a ceiling for those fees: "For any twelve-month period, the franchise fees paid by a cable operator with respect to any cable system shall not exceed 5 percent of such cable operator's gross revenues derived in such period from the operation of the cable system to provide cable services."  Plaintiffs argue that, in light of this federal regulatory framework, they have properly alleged that the conduct of Verizon PA violated a federal statute, and as such, this Court has federal question jurisdiction over their claims.  (Resp. at 6) (quoting

---

[2] Because standing is "the threshold issue in every federal case, determining the power of the court to entertain the suit," Warth v. Seldin, 422 U.S. 490, 498 (1975), I need not consider Verizon DE's arguments that the claims against them should also be dismissed for lack of personal jurisdiction and for failure to plead a viable claim.

TriState HVAC Equip., LLP v. Big Belly Solar, Inc., 753 F.Supp.2d 517, 524 (E.D. Pa. 2010) ("A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violates a federal statute.")).

Verizon PA disagrees, and moves to dismiss this claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Verizon PA cites to City of Chicago v. Comcast, 384 F. 3d 901 (7th Cir. 2004), for the proposition that there is no federal question jurisdiction over a contractual dispute about the calculation of franchise fees between a municipality and a cable services provider where interpretation of the federal statute is not required.  Like the case before me, City of Chicago involved "Cable TV operators [who] signed contracts promising to pay the City 5% of their gross revenues from any service."  Id. at 902. The dispute between the city and the cable operators arose when the cable operators "stopped remitting payments based on cable-modem services" after the "Federal Communication Commission concluded that cable-modem service is an information rather than a telecommunications product."  Id. at 902-03.  The Seventh Circuit characterized the essence of that dispute as follows:

> If cable-modem service is not a programming service, the reasoning goes, then receipts from the cable operators' role as Internet service providers cannot be included among "gross revenues derived in such period from the operation of the cable system to provide cable services" [47 USC § 542(b)] (emphasis added). If the fee on revenues from TV service already is at the statutory cap of 5% (as it is in Chicago), then cities that collect fees based on gross revenue from other services would receive income exceeding 5% of the allowable revenue base.

Id. at 903 (emphasis in original).  The Seventh Circuit then found that, even though the franchise agreements were regulated by federal law, the dispute over the fees owed under the agreements were state law contractual claims:

6

The contracts between Chicago and the cable operators recognize that the payments are subject to any limits imposed by federal law. This does not mean, however, that the claim is itself based on federal law; stating the obvious (given the Supremacy Clause, what other option do the parties have?) does not affect the source of law under which a claim arises . . . . Mentioning a federal issue in a contract, or for that matter a complaint, does not determine the source of the claim itself. Think of the Federal Arbitration Act, [], which authorizes parties to prescribe arbitration as a means to resolve disputes growing out of interstate transactions, precludes any state interference with these agreements except to the extent the general law of contract would regulate any other agreement, and provides in § 9 and § 10 detailed criteria for confirming or vacating awards. Many arbitration agreements refer to this federal statute, and whether they refer to it or not any dispute about arbitrability or the validity of an award must be resolved under the Arbitration Act's terms. Yet even this is not enough to create federal jurisdiction, because the claim that the plaintiff seeks to vindicate still arises under the contract, and thus under state law. [citing several cases in support of this statement]. Like the Federal Arbitration Act, <u>the Federal Communications Act regulates transactions without creating the claim sought to be vindicated.</u> Chicago's financial demand rests on state law (including the state law of contract); § 542(b) sets a cap on payments without creating a federal floor under them (cities could agree to accept less than 5%).

<u>Id.</u> at 904-05 (emphasis added).

I find the reasoning in <u>City of Chicago</u> to be persuasive and applicable to the case before me.[3] Here, the claim that Plaintiffs seek to vindicate – that subscriber late payment fees be included in "gross revenue" upon which calculation of the late payment fee revenues is based – requires me to look only to the terms of the contract, and not to the federal statute.

In an attempt to avoid the reasoning of <u>City of Chicago</u>, Plaintiffs cite to an unreported decision from the Middle District of Pennsylvania, <u>Township of Tunkhannock v. Blue Ridge Communications, Inc.</u>, 2006 WL 3613779 (M.D. Pa. Dec. 11, 2006), which concluded that a suit brought by a municipality against a cable services provider with respect to a disputed franchise

---

[3] <u>City of Chicago</u> involved a challenge to removal, as opposed to a motion to dismiss a case that was filed originally in federal court. Nonetheless, I find that <u>City of Chicago</u> addressed the same substantive legal issue as is in dispute in this case.

agreement was governed by the Act.  Id. at *2.  I find that the circumstances of Tunkhannock are distinguishable.

Tunkhannock involved interpretation of a federal statute, the key issue being whether the franchise agreement was inconsistent with the Federal Communications Act.  After determining that the statute of limitations for contract actions in Pennsylvania did not bar the suit, the court addressed the question of whether "the Cable Act precludes [a municipality] from collecting a franchise fee on what [the cable services provider] considers a private cable system in [a] development."  Id.  The court reasoned:

> We cannot merely look to Pennsylvania contract law to interpret the franchise agreement signed by the parties and reach a decision in this declaratory judgment action. Congress clearly intended for the Cable Act to preempt any franchise agreement inconsistent with its provisions. Specifically, 47 U.S.C. § 556(c) provides that, "any provision of law of any State, political subdivision, or agency thereof, or franchising authority, or any provision of any franchise granted by such authority, which is inconsistent with this chapter shall be deemed to be preempted and superseded."  Accordingly, we may analyze the substance of the franchise agreement only after determining that it does not conflict with the Cable Act.

Id. at *4 (emphasis added).

Unlike the analysis undertaken in Tunkhannock, the case before me does not necessitate interpretation of a federal statute.  I need not determine whether the terms of the franchise agreement are inconsistent with the Act before analyzing the substance of the claims.  It is clear (and the parties do not dispute) that the five percent of gross revenue which Penn Hills and South Hills are to receive as franchise fees from Verizon PA comply with the ceiling set by the federal statute.  Thus, this dispute is purely contractual which requires examination of state law only.

I further disagree with Plaintiffs' argument that federal court jurisdiction is appropriate because the Federal Communications Act entirely regulates matters related to the underpayment

8

of franchise fees, which necessarily includes the claims before me.  (Resp. at 10-11.)  While the Act does entail a complex federal regulatory framework surrounding cable services, the expressly stated preemption terms of the Act do not go as far as Plaintiffs contend.  The Act in fact encourages state jurisdiction over cable services, stating that "[n]othing in this subchapter shall be construed to restrict a State from exercising jurisdiction with regard to cable services consistent with this subchapter."  47 U.S.C. § 556(b).  The Act states only that a provision of a franchise agreement "which is inconsistent with this chapter shall be deemed to be preempted and superseded."  47 U.S.C. § 556(c).  I further find Plaintiffs' field preemption argument to be undercut by the fact that they have also included state law causes of action (breach of contract and unjust enrichment) in their complaint.  For all of the reasons noted above, Plaintiffs' Federal Communications Act claim against Verizon PA will be dismissed.

**B.    Class Action Fairness Act**

Having dismissed Plaintiffs' Federal Communications Act claim against Verizon PA, there is no basis for federal question jurisdiction. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil action arising under the Constitution, laws, or treaties of the United States.").  Because Plaintiffs' suit against Verizon DE will also be dismissed for lack of standing, there is also no basis for diversity jurisdiction for the remaining state law claims against Verizon PA.  28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum of $75,000, [], and is between citizens of different states").  Thus, the only remaining possible basis for federal court jurisdiction is diversity jurisdiction under the Class Action Fairness Act (CAFA).

CAFA does not provide a basis for jurisdiction in this case, for two reasons.  First, it requires there to be a degree of diversity among the parties:

9

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

> **(A)** any member of a class of plaintiffs is a citizen of a State different from any defendant;

> **(B)** any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

> **(C)** any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C § 1332(d)(2).  Because Plaintiffs, a group of municipalities in the Pittsburgh area, and Verizon PA, the sole remaining defendant, are all citizens of Pennsylvania, there is no diversity among the parties, and thus no basis for CAFA jurisdiction.

Second, even if there were a degree of diversity among the parties, this lawsuit would still be subject to two exceptions under CAFA that would preclude federal court jurisdiction.  In what is known as the "local controversy exception," CAFA directs that a district court shall decline to exercise jurisdiction over a class action in which:

> **(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

> **(II)** at least 1 defendant is a defendant—

> > **(aa)** from whom significant relief is sought by members of the plaintiff class;

> > **(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

> > **(cc)** who is a citizen of the State in which the action was originally filed; and

> **(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed.

10

28 U.S.C § 1332(d)(4)(A).  Then, in what is known as the "home state" exception, CAFA does not allow for federal jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes, in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C § 1332(d)(4)(B).

Given that this action was originally filed in Pennsylvania, the principal parties are citizens of Pennsylvania, and the alleged conduct for which relief is sought occurred in Pennsylvania, both the "local controversy" and "home state" exceptions to federal jurisdiction over class actions apply.[4]  As such, this Court lacks jurisdiction to entertain Plaintiffs' state law claims.

## IV.    CONCLUSION

Plaintiffs, a group of Pennsylvania municipalities who entered into cable service franchise agreements with Verizon PA, lack standing to bring suit against Verizon DE.  The claims against Verizon DE are dismissed.

Because resolution of the contract dispute does not require interpretation of a federal statute, this Court lacks subject matter jurisdiction over this suit.  Finally, with Verizon DE having been dismissed, there is no basis for diversity jurisdiction under the Class Action Fairness Act for the remaining state law claims against Verizon PA.  Consequently, all of Plaintiffs' claims against Verizon PA are dismissed.

An appropriate Order follows.

---

[4] Defendants further argue that diversity jurisdiction under CAFA does not exist in that the damages to the putative class do not meet the jurisdictional amount in controversy required by CAFA.  Having concluded, for several other reasons, that CAFA does not provide a basis for federal jurisdiction, I need not address this argument.